UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                  **Case No. 3:20-cr-88-BJB**

**BRIAN BYRD**

### OPINION & ORDER

May a sentencing judge decline to impose victim restitution that the victim doesn't want?  18 U.S.C. § 2259(a) commands that district judges "shall order restitution for any offense under th[e] chapter" covering the child-pornography crimes that Brian Byrd pled guilty to: 18 U.S.C. §§ 2251(a), (e); 2252A(a)(1), (b)(1); 2260A. He faced a 35-year mandatory minimum and received a mid-guidelines sentence of 433 months' imprisonment. Neither the government nor the victim, however, asked the Court to impose restitution against Byrd. To the contrary, the government contended the Court should not—and indeed could not—award an unrequested remedy to an unwilling recipient. Gov't Supplemental Brief (DN 42) at 3–4; *see also* Byrd Supplemental Brief (DN 43) at 1 (agreeing).

But Congress did not leave the question of victim restitution to the government's discretion—or to this Court's. It made victim restitution "mandatory." § 2259(b)(4)(A).

### A. The Requirement to Order Restitution

When Congress enacted this restitution provision, it required that a sentencing "court shall order restitution for any offense" under Chapter 110 "in addition to any other civil or criminal penalty authorized by law." Pub. L. 103-322 (1994), § 40113 (now codified, as amended, at 18 U.S.C. § 2259). Two decades later, a split among the circuits led the U.S. Supreme Court to address the law's causation requirement in *Paroline v. United States*, 572 U.S. 434 (2014). The Supreme Court held that a restitution order must rest on the defendant's proximate causation of at least some of the victim's losses, even if the defendant's relative role and proportionate share of the overall losses were trivial. *Id.* at 446–49.

Congress responded by enacting the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. As set forth below, the Act codified a two-step loss-causation determination and introduced a minimum restitution amount of $3,000. *See* Pub. L. No. 115–299, § 3 (2018) (codified at 18 U.S.C. § 2259(b)). The 2018 amendments underscore the importance of victim restitution in these prosecutions. Now the "Mandatory Restitution" provision, § 2259, contains a further subsection

reiterating—in no uncertain terms—that "[t]he issuance of a restitution order under this section is mandatory," § 2259(b)(4)(A). The provision contains specific instructions for determining the amount of restitution a "court *shall order*" "[i]f the defendant"—as here—"was convicted of trafficking in child pornography." § 2259(b)(2). In those cases, "the court *shall order* restitution in an amount that reflects the defendant's role in the causal process that underlies the victim's losses, but which is no less than $3,000." § 2259(b)(2)(B) (all emphases added).

Not a single exception appears in this section of the statute to counterbalance these express commands. In fact, the revised statutory scheme explicitly forecloses two factors traditionally relevant to a court's restitution award: a "court may not decline to issue an order" based on economic hardship to the defendant or alternative compensation for the victim. § 2259(b)(4)(B). Previously the law required "balanc[ing] the victim's interest in compensation against the financial resources and circumstances of the defendant." *United States v. Bruchey*, 810 F.3d 456, 458 (4th Cir. 1987) (describing the Victim and Witness Protection Act of 1982). But these factors no longer apply in light of the Mandatory Victims Restitution Act, *United States v. Alalade*, 204 F.3d 536, 540 (4th Cir. 2000), which applies here, *see* 18 U.S.C. § 2259(b)(3). And under traditional principles of equity, of course, either a defendant's enrichment or a victim's mitigation might've negated the basis for ordering restitution of some property or profit wrongfully obtained. *See* Cortney E. Lollar, *What Is Criminal Restitution?,* 100 IOWA L. REV. 93, 101–02 (2014) (criticizing trends in criminal restitution away from its equitable roots).

But the law of equity doesn't control this case; we're dealing with a statutory remedy. "Federal courts have no inherent power to award restitution," which is "proper only when and to the extent authorized by statute." *United States v. Jones*, 815 F. App'x 870, 881 (6th Cir. 2020) (quoting *United States v. Church*, 731 F.3d 530, 535 (6th Cir. 2013)). And here the relevant statutes make restitution compulsory. "Congress," the Sixth Circuit has recognized, "requires district courts to impose restitution orders for those who violate particular child pornography offenses." *Jones*, 815 F. App'x at 871 (affirming calculation of loss and apportionment of restitution); *United States v. Hankins*, 858 F.3d 1273, 1277 (9th Cir. 2017) (restitution is mandatory even if the victim purports to waive it). The parties have cited no authority that would allow a court simply to ignore Congress' clear command to award restitution.

### B. The Amount of Restitution to Order

The government's principal objection to restitution here is not that it's optional, but rather that it's "nearly impossible" to calculate without a cooperating victim. Gov't Supp. Br. at 4. Normally, the calculation of restitution follows a two-step process. First, the "court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred." § 2259(b)(2)(A). Next, "the court shall order restitution in an amount that reflects the defendant's relative

role in the causal process that underlies the victim's losses…." § 2259(b)(2)(B). The government bears the burden of "demonstrating the amount of the loss sustained by a victim as a result of the offense" by a preponderance of the evidence. *See* § 3664(e) (Mandatory Victims Restitution Act); § 2259(b)(3) (incorporating MVRA). So a restitution order typically depends on "the government's ability to prove the defendant's offense is the proximate cause of the victim's losses." *United States v. Mobasseri*, 828 F. App'x 278, 279 (6th Cir. 2020).

Causation is not remotely in doubt here, even though the government declined to offer any evidence. This is not a case, like *Paroline*, in which dispersed viewers of pornography each caused fractional harm to a photographed victim who never encountered them. *See* 572 U.S. at 456–57. Rather, this defendant abused the victim, recorded the incident, and distributed the pornographic video on social media. Gov't Sentencing Memo (DN 34) at 1; *see Paroline*, 572 U.S. at 450 (listing similar examples for which the causation "showing could be made with little difficulty"). No internet connection, online forum, or any other intermediary separated the victim and the victimizer in a manner that could sow doubt about causation. The victim directly suffered harm that Byrd directly caused.

Still, the quantification question remains: what is the amount of loss Byrd caused? How can a court, lacking evidentiary support from the government, calculate the losses incurred by an absent victim? It can't, at least in the view of the United States: determining the loss is futile—and without a loss amount, the court cannot ascribe any portion of that amount to the defendant. Gov't Supp. Br. at 3.

But surrender is a last resort in statutory interpretation: "courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014). And here the text supplies two critical instructions that allow courts to faithfully and reasonably effectuate Congress' demand for "mandatory restitution" for "the amount of the victim's losses," § 2559(a), despite the inaction of the government and the victim.

**1.** "No victim shall be required to participate in any phase of a restitution order." § 3664(g)(1). This provision presupposes the issuance of "a restitution order," consistent with § 2259's commands, *regardless* of whether a victim participates. And that notion refutes the parties' unified position in this case. *See* Gov't Supp. Br. at 2–3; Byrd Supp. Br. at 1. A victim may decide, for her own reasons, whether or not to show up. But that private choice doesn't control public punishment: "Private parties cannot simply agree to waive the application of a criminal statute." *United States v. Bearden*, 274 F. 3d 1031, 1041 (6th Cir. 2001) (quoting *United States v. Savoie*, 985 F.2d 612, 619 (1st Cir. 1993)); *Hankins*, 858 F.3d at 1277 (victim may not waive or settle statutory restitution award).

**2.** "[T]he court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but

which is *no less than $3,000.*" § 2259(b)(2)(B) (emphasis added). When neither victim nor prosecutor provides support for a particular loss amount, the statute provides a backstop. It presumes a floor of $3,000 in harm. And courts of appeals have affirmed orders of restitution whose harm quantification was pegged to this statutory default. *See Mobasseri*, 828 F. App'x at 280 (affirming the reasonableness of the district court's imposition of a $3,000 order based, in part, on Congress' decision to set the floor at that amount); *United States v. Clemens*, 990 F.3d 1127, 1130 (8th Cir. 2021) (upholding $3,000 restitution as mandatory minimum amount). Congress' decision to fix a minimum loss amount in the statute reconciles the court's mandatory duty to impose a restitution order, § 2259(a), the victim's discretionary right not to participate, § 3664(g)(1), and the defendant's entitlement to a reasoned basis for the loss amount, *Mobasseri*, 828 F. App'x at 280.

### C. Enforcement

The entry of a restitution order in these circumstances is mandatory, but the order's enforcement is another matter. The former is a duty of the judiciary; the latter primarily falls to the executive. The restitution statutes afford much broader discretion regarding when and how to enforce a restitution order, *see, e.g.*, 28 U.S.C. § 3203 *et seq.* (Federal Debt Collection Procedure Act), than they do regarding whether to enter an order in the first place, *see* 18 U.S.C. §§ 2259, 3664. "An order of restitution may be enforced by the United States in the manner provided for in [18 U.S.C. §§ 3571–74, 3771] *or* by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A).

The victim also retains lesser, albeit meaningful, discretion over the enforcement and distribution of restitution. The same subsection that affords a victim the right not to participate in a restitution proceeding also recognizes the victim's right "to assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury," § 3664(g)(2), and to pursue civil recovery under state law, § 3664(m)(1)(B); *United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004).

The Court also retains a role, however, and must "order the probation officer to obtain and include in … a separate report … information sufficient for the court to exercise its discretion in fashioning a restitution order." § 3664(a). The Court therefore orders the U.S. Probation Office, the government, and defense counsel to carry out the instructions of § 3664, including by addressing whether the victim's interest should be assigned to the Crime Victims Fund. *See* § 3664(g)(2); *Hankins*, 858 F.3d at 1278 ("the district court ordered what makes practical sense within the spirit and confines of the MVRA: it did not modify the sentence itself but redirected payments to the Fund."). After reviewing the report of the probation officer and any responses by the parties, the Court will fashion an appropriate restitution order for the government and, potentially, the victim to enforce in the exercise of their lawful statutory discretion.

\* \* \*

The commission, prosecution, and resolution of these criminal offenses are unspeakably challenging—even tragic—to confront. Their profound effects on the people involved may well explain why the government, defendant, and victim uniformly wished to avoid the additional difficulties posed by a post-plea restitution order. Quantifying the "harm" and "loss" suffered by a child under these circumstances would be daunting for anyone. Make no mistake: nothing in this opinion or order should call into question the good faith of the parties' preference to leave well enough alone. Ordinarily the Court would readily agree—and allow everyone involved to move on.

But that is not a choice Congress left for judges to make. The sources of the Court's authority to convict the defendant and sentence him to decades in prison—the federal sex-offense and sentencing statutes—are the same sources that compel the Court to order restitution. Neither those specific laws, nor the rule of law generally, afford an individual judge the option simply to look the other way, no matter how much better the view.

Benjamin Beaton, District Judge
United States District Court

October 29, 2021